UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ANTONIO M. CABALLERO, <br> TDCJ No. 02262340, <br><br> Petitioner, <br><br> v. <br><br> BOBBY LUMPKIN, Director, <br> Texas Department of Criminal Justice, <br> Correctional Institutions Division, <br><br> Respondent. | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | CIVIL NO. SA-21-CA-0933-JKP |

**MEMORANDUM OPINION AND ORDER**

The matter before the Court is Petitioner Antonio M. Caballero's petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 challenging his state court conviction and 40-year sentence for driving while intoxicated (habitual). (ECF No. 1).[1] Also before the Court are Respondent Bobby Lumpkin's amended answer and Petitioner's reply. (ECF Nos. 10 and 11). The petition is denied for the following reasons.

**I. Background**

In November 2017, Petitioner was charged with one count of driving while intoxicated, a Class A misdemeanor enhanced to a third-degree felony offense due to four prior DWI convictions, and further enhanced by two additional felony convictions for a sentence under a habitual offender statute. (ECF No. 8-1 at 31-32); *see also* Tex. Pen. Code Ann. § 12.42(d). He pleaded "not guilty" to the charge and "not true" to the prior felony convictions and the habitual offender allegation. (ECF No. 8-6 at 11–12). Nevertheless, he was found guilty by a jury, and

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

his trial proceeded to the punishment phase. (ECF No. 8-7 at 152–53).

During the punishment phase, the prosecutor presented evidence of Petitioner's prior felony convictions for burglary of a habitation in 1997 and drug possession in 2009. *Colin [a/k/a Caballero] v. State*, No. 13-19-00277-CR, 2021 WL 822702, at *1 (Tex. App.—Corpus Christi-Edinburg Mar. 4, 2021, pet. ref'd). The prosecutor then argued:

> As you move through this, there is a section on parole law.... Generally, what I tell juries is that you can consider what affect he may get good time for. What that means is that you may assess him a punishment and he may not serve all of it, right? And so that can be used to affect, you know, whatever is it that you assess, and you can go delve deeper into that.

*Id*. at *4. The prosecutor continued on rebuttal:

> You know where the floor is, it's 25 years. It goes all the way up to life. I'm not going to get involved in what y'all do back there. That's y'all's decision. But what I want you to understand is that number, you've got to lay down with a number tonight that you feel safe with, right? A number that you feel like he's going to prison, he's going to be there for this amount of time, regardless of how parole could affect that he doesn't serve that full sentence, and then in those amount [sic] of years, he might be right back here in Bexar County, or maybe he'll be up in Comal County drinking and driving and putting people at risk.
>
> . . .
>
> I know 25 is a scary number, but what is scarier is waking up in the morning seeing a news story of, yet again, another family that's been killed by a drunk driver, of yet, again, someone who has lost their life because they were just driving at night, because somebody like Antonio Caballero got in the car at .24, passed out at an intersection, and something really bad happened. So, when you go back there, come back with a number that makes you feel comfortable that he's not going to continue to be a danger to our society. Protect our society, protect Bexar County in the sense that you send him to prison for enough time so that when you go to sleep tonight and in the next 20, 30 years, 40 years, you know that there's one less person out there that could possibly hit somebody and change the course of their life.

*Id*. Notably, Petitioner did not object to any of the prosecutor's remarks during the closing argument. *Id*. at *5.

After the jury listened to the punishment evidence and the arguments of counsel, the trial court advised the jury that if it found Petitioner had been previously convicted on the two felonies and the habitual offender statute applied as alleged in the indictment, he faced a sentence of not less than 25 years in prison. *Id*. at *1. It added, however, that Petitioner could earn time off his sentence for good conduct:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

*Id*. at *2. And it explained that Petitioner could be eligible for release on parole:

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.
>
> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served plus any good conduct time equals one-fourth of the sentence imposed or 15 years, whichever is less. Eligibility for parole does not guarantee that parole will be granted.
>
> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

*Id*. The trial court then added that, although the jury could consider the possibility of parole and good conduct time, it could not consider how either might be applied to Petitioner:

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

*Id*.

3

The jury found both enhancement offenses were "true," elevating Petitioner's punishment range to a habitual status. (ECF No. 8-8 at 83–84); *see* Tex. Pen. Code Ann. § 12.42(d) (stipulating that the sentencing range for a habitual offender is "life, or for any term of not more than 99 years or less than 25 years"). It sentenced Petitioner to 40 years' imprisonment.[2] *Id*. at 84.

Petitioner raised two objections in his direct appeal. He alleged the "the jury charge incorrectly set forth the amount of time [he] would have to serve before he would be eligible for parole." *Colin*, 2021 WL 822702, at *2. He explained "the charge listed 15 years as a minimum mandatory and the actual mandatory sentence for [his] conviction was 25 years." *Id*. at *3. He argued this error "resulted in egregious harm." *Id*. at *2. He then asserted the trial court erred "when it allowed improper argument." He claimed the trial court should not have permitted the prosecutor to ask the jury to consider the application of parole law to his sentence. *Id*. at *4. He observed the trial court instructed the jury that it was not to consider the manner in which the parole law may be applied to him. *Id*.

The Thirteenth Court of Appeals overruled Petitioner's objections. It noted the "charge . . . included language directly from article 37.07 of the code of criminal procedure." *Id*. at *3. "This language provided that, '[u]nder the law applicable in this case, if the defendant is sentenced to a term of imprisonment, the defendant will not become eligible for parole until the actual time served plus any good conduct time earned equals one-fourth of the sentence imposed or 15 years, whichever is less.'" *Id*. (quoting Tex. Code Crim. Proc. Ann. art. 37.07, § 4(b)). It found Petitioner had "conflate[d] a minimum sentence with parole eligibility." *Id*. It concluded,

---

[2] Petitioner's projected release date is May 13, 2035. *See* https://inmate.tdcj.texas.gov/InmateSearch, search for "Caballero, Antonio" last visited February 9, 2023.

4

pursuant to article 37.07, Petitioner's eligibility date for release to prole was "well inside the 25 years that [he] fears he [would] serve before release." *Id*. It also noted Petitioner "did not object to any remarks during the prosecutor's closing argument." *Id*. at *5. It explained in order "[t]o preserve any error based on improper jury argument, 'the defendant must object to the argument and pursue the objection until the trial court rules adversely.'" *Id*. (quoting *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd)). It concluded Petitioner could not, therefore, raise this complaint on appeal. *Id*. (citing Tex. R. App. P. 33.1(a)(1)(A)).

Petitioner's petition for discretionary review, which raised the same issues, was refused by the Texas Court of Criminal Appeals. *Caballero v. State*, PD-0271-21 (Tex. Crim. App. 2021). He did not pursue an application for state writ of habeas corpus with the Texas Court of Criminal Appeals. (ECF No. 7-1 at 2).

Petitioner now asserts an entitlement to federal habeas relief on two grounds. (ECF No. 1). First, he maintains the jury charge contained an error regarding his parole eligibility. *Id*. at 5, 16. Second, he contends the prosecutor made an improper argument concerning his parole eligibility. *Id*. at 7, 17-18. He asks the Court to remand his case back to the state court "for a new trial on the punishment." *Id*. at 15.

## II. Standard of Review

The writ of habeas corpus is "an extraordinary remedy" reserved for those petitioners whom "society has grievously wronged." *Brecht v. Abrahamson*, 507 U.S. 619, 633–34 (1993). It "is designed to guard against extreme malfunctions in the state criminal justice system." *Id*. (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n.5 (1979) (Stevens, J., concurring)). It is granted by a federal court pursuant to 28 U.S.C. § 2254 only where a state prisoner "is in custody in

5

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Preiser v. Rodriguez*, 411 U.S. 475, 484–87 (1973). It is not granted to correct errors of state constitutional, statutory, or procedural law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996).

Consequently, "federal courts do not sit as courts of appeal and error for state court convictions." *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986). They may grant § 2254 relief only when a petitioner successfully raises a federal issue. *Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995). And they must find (1) the state court adjudicated the federal issue contrary to clearly established federal law as determined by the Supreme Court, or (2) the state court's decision was based on an unreasonable determination of the facts considering the record. *Harrington v. Richter*, 562 U.S. 86, 100–01 (2011). They must defer to state court decisions on the merits. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002). They must accept as correct any factual determinations made by the state courts unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *see Ford v. Davis*, 910 F.3d 232, 234 (5th Cir. 2018) ("a state court's factual findings are presumed to be correct, and the applicant bears the burden of rebutting that presumption by clear and convincing evidence."). Finally, they must accept state court decisions on procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991); *Muniz v. Johnson*, 132 F.3d 214, 220 (5th Cir. 1998).

### III. Analysis

**A.** **Jury Charge**

Petitioner first asserts the jury charge contained an error regarding his parole eligibility. (ECF No. 1 at 5, 16). He claims that "[b]y confusingly referring to good conduct time credit and

its effect on parole even though the concept is inapplicable to [him] until after having served 25 years of flat time, the instructions are eminently ambiguous and therefor subject to an erroneous interpretation." *Id*. at 16.

"Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief." *Tarpley v. Estelle*, 703 F.2d 157, 159 (5th Cir. 1983) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973)). "Before a federal court may grant relief under 28 U.S.C. § 2254 based on alleged error in a state trial court's unobjected to charge, the error must be so egregious as to rise to the level of a constitutional violation or so prejudicial as to render the trial itself fundamentally unfair." *Baldwin v. Blackburn*, 653 F.2d 942, 951 (5th Cir. 1981) (quoting *Bryan v. Wainwright*, 588 F.2d 1108, 1110-1111 (5th Cir. 1979)). Indeed, "[a] deficient jury charge is not grounds for federal habeas relief unless the instruction was, in and of itself, violative of a constitutional right." *Bishop v. Epps*, 265 F. App'x 285, 293 (5th Cir. 2008) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991)). Thus, to warrant federal habeas relief, "it must be established not only that the instruction [was] undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the fourteenth amendment, and that 'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Washington v. Watkins*, 655 F.2d 1346, 1369 (5th Cir. 1981) (quoting *Cupp*, 414 U.S. at 146, 147).

In this case, the charge "included language directly from article 37.07 of the code of criminal procedure." *Colin*, 2021 WL 822702, at *3. And it was not on its face so egregious as to rise to the level of a constitutional violation or so prejudicial as to render Petitioner's trial fundamentally unfair.

Furthermore, the Thirteenth Court of Appeals determined that "no jury charge error exist[ed]," and it denied Petitioner's claim in his direct appeal. *Colin*, 2021 WL 822702, at *3-4. It found that Petitioner had "conflate[d] a minimum sentence with parole eligibility." *Id*. at 3. It concluded that, pursuant to Texas Code of Criminal Procedure article 37.07, Petitioner's eligibility date for release to prole was "well inside the 25 years that [he] fears he [would] serve before release." *Id*.

The Court accepts the state appellate court's findings and conclusions as the last reasoned opinion of the state courts. *See Kernan v. Hinojosa*, 578 U.S. 412, 416 (2016) (Sotomayor, J., dissenting) ("When faced with a state-court order that denies a habeas petition without explanation, this Court has long presumed that the order agrees with the 'last reasoned state-court opinion' in the case unless there is 'strong evidence' to the contrary.) (quoting *Ylst v. Nunnemaker*, 501 U.S. 797, 804–805 (1991)). Petitioner provides no clear and convincing evidence to rebut the state appellate court's conclusion that the jury charge did *not* contain an error regarding his parole eligibility. Consequently, it further finds that, given the lack of both legal authority and factual support for Petitioner's suggested federal constitutional deprivations, Petitioner cannot make a substantial showing of the denial of a federal right. *Harrington*, 562 U.S. at 100-01. Therefore, it also finds Petitioner is not entitled to federal habeas relief on this claim.

**B.  Improper Argument**

Petitioner asserts that the prosecutor's closing argument during the sentencing phase was improper because it invited the jury to consider parole law in its assessment of punishment. (ECF No. 1 at 7, 17-18). He argues "[t]he prejudicial effect of this type of argument places

collateral matters improperly before the jury at a critical state of the trial [and] has long been considered reversable error." *Id*. at 17.

The Thirteenth Court of Appeals noted that Petitioner "did not object to any remarks during the prosecutor's closing argument." *Colin*, 2021 WL 822702, at *5. It explained that, in order to preserve any error based on an improper jury argument, "the defendant must object to the argument." *Id*. (quoting *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd). It concluded that, since Petitioner failed to object, he could not raise his complaint on direct appeal. *Id*. (citing Tex. R. App. P. 33.1(a)(1)(A)).

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). The "Texas contemporaneous objection rule constitutes an adequate and independent state ground that procedurally bars federal habeas review of a petitioner's claims." *Styron v. Johnson*, 262 F.3d 438, 453-54 (5th Cir. 2001) (quoting *Jackson v. Johnson*, 194 F.3d 641, 652 (5th Cir. 1999) (internal citations omitted).

The Court finds Petitioner has failed to demonstrate cause for his default or actual prejudice. It further finds he has not shown a failure to consider his claim will result in a fundamental miscarriage of justice. The Court therefore also finds it is procedurally barred from considering Petitioner's claim.

9

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To warrant a certificate as to claims that a district court rejects solely on procedural grounds, the petitioner must show both that "jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Reasonable jurists could not debate the Court's reasoning for denying Petitioner's claims on substantive or procedural grounds—or find that his issues deserve encouragement to proceed. *Miller El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). The Court will not issue a certificate of appealability.

### V. Conclusion and Order

The Court concludes that Petitioner has not shown he is in custody in violation of the Constitution or laws or treaties of the United States, his claims are without merit, and he is not entitled to federal habeas relief. The Court further concludes that Petitioner is not entitled to a certificate of appealability.

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.      Federal habeas corpus relief is **DENIED** and Petitioner Antonio M. Caballero's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DISMISSED WITH PREJUDICE**;

2.      No Certificate of Appealability shall issue in this case; and

3.      All other motions, if any, are **DENIED**, and this case is now **CLOSED**.

It is so **ORDERED**.

**SIGNED this the 10th day of February, 2023.**

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**